**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **JACOB J. LANDRY** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 11-48** |
| | * | |
| **CHET MORRISON CONTRACTORS,** | * | **SECTION "L"(3)** |
| **LLC, ET AL.** | * | |

**ORDER & REASONS**

The Court has pending before it Defendants' Motion for Partial Summary Judgment

(Rec. Doc. 12). The Court has reviewed the briefs and the applicable law and heard oral

argument, and now issues this Order and Reasons.

**I.      BACKGROUND**

This is a civil action brought by the Plaintiff, Jacob Landry, pursuant to the Jones Act and

general maritime law against his employers, the owners and operators of the CM-15, a pipelay

barge. The facts surrounding the accident and Plaintiff's employment status are mostly

undisputed. Plaintiff was a seaman assigned to the CM15. The evidence suggests that Plaintiff

was adequately trained by Defendants, attended daily safety meetings, and was instructed to

watch out for slip hazards and always look where he stepped. His job involved pulling a lever to

allow pipes to roll on to a welding rack, covering the pipe so other workers could weld it, and

walking back and forth between ends of the rack of pipes. The work space was approximately

eight feet by twelve feet, with space for two or three people.

Plaintiff was working on January 21, 2008, on an 8:00 p.m. to 8:00 a.m. shift. There

does not seem to be a dispute that the lighting was adequate. Deposition testimony also suggests

that the movement of the barge was normal.  There was one other worker nearby.  About three hours into the shift, Plaintiff slipped and fell on an empty 20-ounce water bottle which was on the floor of the workspace.  There is no indication that there was water on the floor or that there were any other problems with traction.  The record is devoid of evidence of where the bottle came from, and Plaintiff testified that he examined the work area before he began his shift and did not see anything on the deck.  Plaintiff testified at his deposition that if he had looked down he would have seen the bottle:

> Q.      Based on what you saw after the accident, you have no doubt that if you
>         had looked down before the accident, you would have seen the bottle;
>         correct?
> A.      Yes, sir.

(Rec. Doc. 12-4 at 22).

Plaintiff filed suit in this Court on January 11, 2011.  He alleges that the water bottle was present because of Defendants' negligence or that it was an unseaworthy condition of the CM-15.  He seeks damages for lost wages, medical expenses, and pain and suffering, as well as allegedly unpaid or underpaid maintenance and cure benefits.  The three named Defendants filed a joint answer denying liability and  asserting various affirmative defenses.

## II.     PRESENT MOTION

Defendants now move for partial summary judgment on Plaintiff's claims of Jones Act negligence and unseaworthiness.  They contend that at the time of the incident, Plaintiff was engaged in an easy job that simply involved walking, pulling a lever, and covering pipe.  Defendants cite competent summary judgment evidence regarding the safe work conditions and Plaintiff's adequate training.  They argue that slipping on an open and obvious water bottle was entirely the result of Plaintiff's negligence and failure to look where he was walking, and that the

bottle was not an unseaworthy condition.

Plaintiff offers a number of arguments as to how Defendants were negligent or how the barge was unseaworthy. He argues that his job duties required looking at the pipe he was rolling rather than at his feet, and therefore he was not negligent and that the bottle was not open and obvious. He also argues that either his co-worker's negligence for failing to see the bottle should be imputed to Defendants, or that Defendants should have had an additional employee present to ensure safety.

## III.    LAW AND ANALYSIS

### A.    Standard on Motion for Summary Judgment

A district court can grant a motion for summary judgment only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle*

*Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986)). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (internal citations omitted).

**B.      Negligence**

Under the Jones Act, an employer has the duty to "provide his seaman employees with a reasonably safe place to work." *Simmons v. Transocean Offshore Deepwater Drilling, Inc.*, 551 F. Supp. 2d 471, 475 (E.D. La. 2008) (citing *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir. 1989)). An employer breaches that duty if it fails to exercise ordinary prudence and is thereby negligent. *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 338, 339 (5th Cir. 1997) (en banc). In other words, an employer breaches its duty if it disregards a danger that it "'knew or should have known.'" *Colburn*, 883 F.2d at 374 (quoting *Turner v. Inland Tugs Co.*, 689 F. Supp. 612, 619 (E.D. La. 1988)). Under the Jones Act, the negligence of a fellow employee is imputed to the employer. *See Brister v. A.W.I., Inc.*, 946 F.2d 350, 354 (5th Cir. 1991) (noting that this leads to "a broad basis for liability"); *see also De Zon v. Am. President Lines, Ltd.*, 318 U.S. 660, 664-65 (1943). "The standard of care for a Jones Act seaman is to act as an ordinarily prudent seaman would act in like circumstances." *Jackson v. OMI Corp.*, 245 F.3d 525, 528 (5th Cir. 2001). Apart from negligence, a plaintiff seeking relief under the Jones Act must show causation. "A seaman is entitled to recovery under the Jones Act if his employer's negligence is the cause, in whole or in part, of his injury." *Gautreaux*, 107 F.3d at 335. The Fifth Circuit has observed that this is a "liberal causation requirement," *Brister*, 946 F.2d at 354, one that places a

"featherweight" burden on the plaintiff, *Landry v. Two R. Drilling Co.*, 511 F.2d 138, 142 (5th Cir. 1975) (quotation omitted).

Defendants argue that the Plaintiff's deposition establishes that he was adequately trained to look where he was stepping and that the sole cause of the accident was his own failure to look where he was going. Thus, Defendants argue that the water bottle was an open and obvious condition that caused injury only because of Plaintiff's failure to act as an ordinarily prudent seaman. Defendants also argue that Plaintiff cannot argue that the presence of the bottle was the result of Defendants negligence, because Plaintiff admitted at his deposition that he does not know where the bottle came from and because it was part of Plaintiff's own job to keep his work area clean from debris.

Defendants cite two cases, neither of which are particularly on point with these facts. In *Patterson v. Allseas USA, Inc.*, the Fifth Circuit reversed a bench trial verdict in favor of a seaman. 137 F. App'x 633 (5th Cir. 2005). In that case, the seaman walked through a puddle and then descended a set of metal stairs without using a handrail. *Id.* at 635. After the bench trial, the district court dismissed the unseaworthiness claim and the Jones Act claim with respect to the shipowner's negligence, but found another defendant liable because a different employee failed to warn the seaman about the risk of descending the stairs with wet boots. *Id.* at 636. The Fifth Circuit reversed, holding that there was no duty to warn because the seaman, having walked through a puddle of water, "should have known that wet boots presented a potential hazard." *Id.* at 638. *Patterson* was an appeal from a judgment after a bench trial, not a grant of summary judgment. Defendants also cite *Pledger v. Phil Guilbeau Offshore, Inc.*, in which this Court granted summary judgment against an individual who alleged that he slipped on algae on a

deck. 2003 WL 2012382, at * 1 (E.D. La. May 1, 2003) (Fallon, J.). But *Pledger* dealt with

general maritime law and LHWCA claims, not a Jones Act claim, and the analysis depended on

an open and obvious growth of algae of which the plaintiff had express knowledge due to a

safety meeting. *See id.* at *6.

In response, Plaintiff argues that he displayed reasonable care under the circumstances by

surveying his work area for hazards before his shift began and watching for hazards throughout

the shift. Plaintiff also emphasizes that his job duties required him to look at the pipe he was

guiding, not where he was walking, and thus he was acting reasonably under the circumstances

by paying attention to the more obvious risk. Plaintiff also argues that he had one co-worker

nearby who would have had the same duty to be on the lookout for hazards, and that if that

fellow employee failed to see the bottle his negligence can be imputed to Defendants.

Alternatively, if neither Plaintiff nor his co-worker were able to reasonably look where they were

walking while working, then Plaintiff argues Defendants were negligent for failing to assign a

third employee to the job to watch the floor for hazards and to ensure the safety of the other two.

In a reply brief, Defendants argue that the Plaintiff's simple, easy job did not prohibit

him from watching where he stepped. Defendants also argue that there is no testimony or

evidence that the presence of a third person would have prevented the accident, and therefore

such argument is wholly speculative.[1]

Summary judgment is inappropriate at this time. There are genuine factual disputes as to

---

[1]Defendants also argue that Plaintiff has conceded the operative facts by filing with his opposition a "Statement of Contested Facts" instead of specifically controverting the "Statement of Uncontested Facts" filed by Defendants with their motion. The Court finds that Local Rule 56.2 has been satisfied.

the extent to which Plaintiff or his co-worker were negligent in failing to see the water bottle on the deck of the barge, and Defendants may be liable if the co-worker was negligent. However, although Plaintiff survives summary judgment, he may face a significant hurdle at trial in avoiding a finding of his own comparative negligence at a high, if not fatal, percentage.

**B.      Unseaworthiness**

"To establish a claim of unseaworthiness, 'the injured seaman must prove that the [vessel] owner has failed to provide a vessel . . . which is reasonably fit and safe for the purposes for which it is to be used.'" *Boudreaux v. United States*, 280 F.3d 461, 468 (5th Cir. 2002) (quoting *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001)). "A vessel's condition of unseaworthiness might arise from any number of circumstances." *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971). For instance, in addition to the physical condition of the vessel, the vessel may have an unfit crew. *Id.*; *accord Bonmarito v. Penrod Drilling Corp.*, 929 F.2d 186, 189-191 (5th Cir. 1991). A vessel may also be unseaworthy because of "an unsafe method of work." *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354-55 (5th Cir. 1988); *accord Phillips v. W. Co. of N. Am.*, 953 F.2d 923, 928 (5th Cir. 1992) (noting that "an unsafe method of work may also render a vessel unseaworthy").

An injured seaman must show something more than an "'isolated, personal negligent act'" in order to establish that a vessel was unseaworthy, however. *Lambert v. Diamond M Drilling Co.*, 688 F.2d 1023, 1024 (5th Cir. 1982) (quoting *Usner*, 400 U.S. at 500). On the other hand, even a temporary condition that makes the vessel unfit can be an unseaworthy condition. As the Supreme Court held in *Mitchell v. Trawler Racer*, a coating of fish slime on the ship's rail was a "transitory" but nonetheless unseaworthy condition of the vessel. 362 U.S.

7

539 (1960).  Thus, the law recognizes a "distinction between 'transitory unseaworthiness,' for which there is liability, and 'instant unseaworthiness' caused by a single unforeseeable act of operational negligence."  *See* 1 Thomas J. Schoenbaum, Admiralty & Maritime Law § 6-26 (5th ed. 2011); 2 Robert Force and Martin J. Norris, The Law of Seamen § 27:6 (5th ed. 2003) ("It is now settled ... that a so-called 'transitory' condition (as the temporary presence of oil, water *or other foreign substance*) of a vessel will make the ship unseaworthy as does a permanent defect.") (emphasis added).

Defendants argue that the Plaintiff's fall was not caused by any feature of the barge itself, such as the construction or condition of the deck or the lighting.  Rather, the sole issue is the presence of the 20-ounce water bottle on the deck that allegedly caused his fall.  Defendants argue that the bottle does not constitute an unseaworthy condition in the barge itself, which was reasonably fit and safe for its intended purpose, and therefore Plaintiff's claim for an unseaworthy condition fails as a matter of law.  Defendants cite *Meyers v. M/V Eugenio C*, 842 F.2d 815 (5th Cir. 1998).  In *Meyers*, the vessel had run aground in an orientation that did not provide any lee for a replacement pilot to safely board, and the pilot argued that this was an unseaworthy condition that caused his injury.  *See id.* at 816-17.  The district court granted summary judgment in favor of the defendant and the Fifth Circuit affirmed, concluding that the plaintiff's theory was one of negligence, not unseaworthiness, "because Meyers does not complain of the condition of the vessel but of the failure of those navigating it to provide him with a lee."  *Id.* at 817.  Analogizing to the present situation, Defendants argue that the presence of the bottle was the result of some person's single act of negligence, not an unseaworthy condition of the barge.

At oral argument, Defendants cited *Barclay v. Cameron Charter Boats, Inc.*, a recent unpublished opinion from the Western District of Louisiana. No. 2:09 CV462, 2011 WL 2690399 (W.D. La. July 5, 2011). In *Barclay*, the plaintiff alleged that he tripped and fell on an extension cord used to run electricity into a vessel's galley after a breaker failed. *Id.* at *1. The court granted summary judgment to the defendant on an unseaworthiness claim based on that extension cord, concluding that the placement of the extension cord was an isolated act of operational negligence that did not render the vessel unseaworthy, "[r]egardless of the length of time the extension cord was in place." *Id.* at *4.

Plaintiff responds that the duty to provide a seaworthy vessel includes the duty to provide adequate crew to perform tasks on the vessel. Plaintiff argues that his job required him to keep his eyes on the pipe he was rolling, not the floor, and that the Defendants' failure to assign an additional crew member to survey the deck for hazards made the barge unseaworthy.

On these facts, summary judgment is inappropriate at this time. The Court concludes that the loose water bottle could have been an unseaworthy condition depending on how long it remained on the deck, and whether it made the vessel unseaworthy is a question for the trier of fact. If a co-worker had dropped the bottle directly in front of Plaintiff who immediately slipped on it, perhaps that would be a single act of operational negligence that caused an injury, rather than a transitory unseaworthy condition. But here, the bottle was on the deck for an unknown period of time. This is analogous to a puddle of oil or fish slime and potentially constitutes a transitory unseaworthy condition, which has been recognized by the Supreme Court as actionable. *See Trawler Racer*, 362 U.S. at 549; *accord* Schoenbaum, § 6-26; Force & Norris, § 27:6. Accordingly, summary judgment is denied as to the unseaworthiness claim. Again, it

should be noted that at trial Plaintiff will face significant and potentially insurmountable issues of comparative negligence.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendants' motion for partial summary judgment (Rec. Doc. 12) is DENIED.

New Orleans, Louisiana, this 9th day of December, 2011.

UNITED STATES DISTRICT JUDGE